IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| REBECCA J. HOGAN, | ) | CASE NO. 1:20-CV-01311 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405 by Rebecca J. Hogan seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Hogan's 2017 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] The parties have filed briefs[5] and

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge James R. Knepp II.
[2] ECF No. 1.
[3] ECF No. 11.
[4] ECF No. 12.
[5] ECF Nos. 14 (Hogan brief), 17 (Commissioner brief), 18 (Hogan reply).

1

supporting fact sheets.[6] They have met and conferred with the goal of reducing or clarifying the issues.[7] They have participated in a telephonic oral argument.[8]

For the following reasons, the decision of the Commissioner will be reversed and the matter remanded for further proceedings consistent with this opinion.

## The ALJ's Opinion

Hogan, who was 58 years old in 2016,[9] has a high school education[10] and relevant past work experience as an insurance agent, a skilled job performed at the sedentary level.[11]

The ALJ found that Hogan has the following severe physical and mental impairments: status post arthroscopic surgery of the left knee, osteoarthritis of the hip, degenerative joint disease, distal arthritis at C5-7, spondylosis of the lumbar and cervical spine, fibromyalgia, obesity, major depressive disorder, attention deficit hyperactivity disorder (ADHD), and anxiety.[12] The ALJ further found the following non-severe impairments: hypertension, skin tags, irritable bowel syndrome (IBS), myopia with astigmatism and presbyopia, cataract, vitamin D deficiency, vitamin B deficiency, anemia,

---

[6] ECF Nos. 14, Attachments 1,2 (Hogan), 17, Attachment 1 (Commissioner).
[7] ECF No. 21.
[8] ECF No. 23.
[9] Tr. at 21.
[10] *Id*. at 185.
[11] *Id*. at 21.
[12] *Id*. at 13.

2

gastroesophageal reflux disease (GERD), greater trochanteric bursitis of both hips, sinusitis, allergic rhinitis, sacrolitis, spignelian hernia, epidermoid cyst, and palpitations.[13]

The ALJ then determined that Hogan did not have an impairment or combination of impairments that met or medically equaled a listing. To that end, she reviewed Listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery of a major weight bearing joint), 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.11(neurodevelopmental disorders). As to the mental listings, the paragraph "B" criteria, which are identical,[14] were examined by the ALJ.[15] She found that Hoban had mild limitations in the areas of understanding, remembering and applying information; interacting with others; and adapting and managing oneself; with a moderate limitation in the area of concentrating, persisting and maintaining pace.[16]

Hogan was then found to have the residual functional capacity to perform light work, with the following exceptions: the claimant can frequently balance, stoop, kneel, crouch, and crawl and can occasionally climb ramps or stairs. However, the claimant should never climb ladders, ropes or scaffolds. She should never be exposed to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle and she should

---

[13] *Id.*
[14] *Wisener V. Comm'r of Soc. Sec.*, 2020 WL 2813981, at *9 (N.D. Ohio May 14, 2020), report and recommendation adopted, *Wisener v. Comm. Of Soc. Sec.*, 2020 WL 2812747 (N.D. Ohio May 29, 2020).
[15] Tr. at 14.
[16] *Id.* at 14-15.

avoid concentrated exposure to extreme cold or wetness. Finally, the claimant should have no fast pace performance or strict production quota requirements.[17]

To support that RFC, the ALJ first addressed Hogan's own testimony about her symptoms and limitations.[18] She found Hogan's claims concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and opinion evidence.

In that regard, she initially addressed the medical evidence as to physical impairments such as knee and hip pain,[19] fibromyalgia,[20] back and neck pain,[21] and obesity.[22] She then considered medical evidence related to mental impairments such as concentration[23] and depression.[24]

Then, the ALJ turned to the opinion evidence. She found the physical capacity opinions of the state agency consultants "persuasive," as they were generally consistent with the record.[25] Similarly, she also found a state agency internal review opinion persuasive, though with caveats related to greater limitations shown by Hogan's obesity and joint/back pain.[26]

---

[17] *Id*. at 15.
[18] *Id*. at 16.
[19] *Id*. at 16-17.
[20] *Id*. at 17.
[21] *Id*. at 17-18.
[22] *Id*. at 18.
[23] *Id*.
[24] *Id*.
[25] *Id*. at 19.
[26] *Id*.

However, she found the state agency opinions as to psychological function only somewhat persuasive.[27] Critically, the ALJ found the psychological opinions persuasive as they related to the four "B" criteria, but, when the consultants were describing the limitations in terms of a residual functional capacity, they stated that Hogan could perform routine tasks that that did not have fast-paced performance or strict production quota requirements.[28] The ALJ found that the record does not support the conclusion that Hogan would be restricted to routine tasks.[29]

In that regard, the ALJ cited three reasons for her assessment:

(1) the consultative examiner found Hogan had average intelligence and was able to maintain good concentration for the duration of the examination;

(2) the same examiner found that Hogan was able to perform skill level work in her prior employment and there is nothing in the record to show that her condition has deteriorated since then such as would indicate her ability to function was also diminished;

(3) Hogan only briefly sought psychological "services" an during the time she was being treated, "her condition was described as moderate and did not change for the duration of the treatment."[30]

---

[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *Id*.

The ALJ then considered a 2017 psychological consultative examination by Charles Loomis. This report stated that Hogan was of above average intelligence, maintained concentration throughout the examination, interacted appropriately and did not display any signs of emotional deterioration.[31] The ALJ then noted that because Loomis did not present his findings in terms of any specific vocational terms, his report was "limited" in its usefulness. But the ALJ found nothing in the relevant treatment record to contradict Loomis.[32]

The ALJ then addressed two internal mental function reviews from 2018, one from Janet Telford-Tyler, Ph.D. on June 12, and the other from Phaedra Carusa-Radin, Psy.D., in September.[33] The ALJ concluded first that Dr. Telford-Tyler's opinion, which stated that Hogan could perform simple and detailed tasks without interruption, as well as adapt to routine changes in the work setting, was persuasive.[34] However, the ALJ found Dr. Carusa-Radin's opinion not persuasive and inconsistent with the record because her assessment of only mild mental limitations did not give proper consideration to Hogan's treatment history, particularly to her need for ADHD medication.[35]

Of note, the ALJ concluded this review by commenting on an argument raised by Hogan's counsel at the hearing that is similar to what is raised here. Namely, that Hogan

---

[31] *Id*. at 19-20.
[32] *Id*. at 20.
[33] *Id*.
[34] *Id*.
[35] *Id*.

6

should be limited to simple, routine tasks.[36] The ALJ rejected that argument, observing that there is nothing in the record to show that Hogan's ADHD so limits her functioning so as to warrant that restriction.[37] To that point, the ALJ stated that none of the treatment records describe conditions such as distractibility or an inability to focus, but do describe her concentration a "good."[38] Thus, the ALJ found, the only appropriate mental limitation is that Hogan "should have no fast pace performance or strict production quota requirements."[39]

That said, the ALJ then determined that Hogan was capable of performing her past relevant work as an insurance agent, with such work actually performed as sedentary.[40]

Alternatively, the ALJ found that work skills from Hogan's job as an insurance agent were transferable to other occupations with jobs existing in sufficient numbers in the national economy.[41] With testimony from a vocational expert (VE), the ALJ found three such jobs that Hogan could perform consistent with the limitations of the RFC: (1) claims clerk, (2) insurance checker, and (3) insurance rater.[42]

Thus, Hogan was found to be not disabled.[43]

---

[36] *Id*.
[37] *Id*.
[38] *Id*.
[39] *Id*.
[40] *Id*. at 20-21.
[41] *Id*. at 21.
[42] *Id*. at 22.
[43] *Id*.

**Issues on Judicial Review**

Hogan raises a single issue for judicial review:

Whether the Administrative Law Judge erred in her finding of residual functional capacity where she ultimately substituted her own opinion for that of the reviewing psychologists that she found persuasive.[44]

**Analysis**

**A.     Standards of Review**

This matter is reviewed here under the well-known and long-established substantial evidence standard that need not be restated. Further, the opinion evidence is analyzed under the rubric that replaces the so-called treating physician rule with a test that determines the persuasiveness of an opinion by reference to how well supported it is and how consistent it is with the other evidence.[45]

**B.     Application of Standards**

Essentially this case concerns the relatively narrow issue of whether, having found the June 12, 2018 opinion of Dr. Janet Telford-Tyler to be "persuasive," the ALJ committed reversible error by not including in the RFC the exact limitations opined by Dr. Telford-Tyler.

---

[44] ECF No. 14 at 1.
[45] 20 C.F.R. § 416.920c.

As argued by Hogan, while Dr. Telford-Tyler, along with the state agency psychologists, was clear that Hogan had the functional ability, without further qualification, to perform "routine" tasks in an environment that did not involve fast-paced performance or strict production quotas, she found the state agency functional capacity assessment "incomplete" for not also noting that Hogan would have "occasional difficulty" performing complex tasks.[46]

As noted above, Hogan's counsel attempted to raise this issue to the ALJ. The ALJ, for her part, did not address what level of compliance with the exact terms of an opinion is required when that opinion is found "persuasive," but did conclude that no additional limitation against "complex" tasks was needed because Dr. Loomis's opinion, generated from a consultative exam, concluded that Hogan was able to maintain concentration throughout the [unknown] length of that examination. Hogan here asserts that this observation "means nothing" since it does not directly rebut Dr. Telford-Tyler's differentiation between Hogans' ability to perform "routine" as opposed to "complex" tasks.[47]

In fact, to Hogan now, there is "simply no persuasive opinion evidence to the contrary [of Dr. Telford-Tyler's opinion that Hogan would be occasionally limited in performing complex tasks]. By ignoring this portion of Dr. Telford-Tyler's opinion, the

---

[46] ECF No. 14 at 8-9.
[47] Id. at 9.

ALJ erred by substituting her own opinion for that of the medical experts – *i.e*., playing doctor.[48]

I begin with some basic observations. First, the new standard of "persuasiveness" is not directly equivalent to the old treating physician standard that was founded on the concept that the medical opinion of a treating source would be "controlling," unless rebutted by good reasons. The new regulation specifically abolished the concept of "controlling weight" and required only that the ALJ "explain" how the factors undergirding a finding of "persuasive" were considered.[49] Further, there is no requirement that, once finding an opinion persuasive, the ALJ must adopt the whole opinion.[50] While, obviously, the better practice would be in such circumstances to find an opinion "largely" or "substantially" persuasive, the key seems to be that the ALJ "explain" how the factors constituting persuasiveness were considered. Here, as even Hogan acknowledges, such an explanation was given, although she disagrees with it.

Moreover, there is no issue here of playing doctor or substituting the ALJ's personal judgment for that of medical experts. The ALJ is required to determine the RFC and may do so even without an explicit opinion from a medical source.[51]

---

[48] *Id*. at 10.
[49] 20 C.F.R. § 404.1520c(b)(2).
[50] *Daniels v. Comm'r of Soc. Sec*., 2020 WL 6913490, at *10 (N.D. Ohio Nov. 24, 2020); see also, *Reeves v. Comm'r of Soc. Sec.,* 618 Fed. Appx. 627, 275 (6th Cir. 2015).
[51] *Coldiron v. Comm'r of Soc. Sec*., 391 Fed. Appx. 435, 439 (6th Cir. 2010).

Finally, Hogan is not fully correct in claiming that no other source opinion contradicted Dr. Telford-Tyler's opinion as to her occasional difficulty with complex tasks. While it is true that the 2017 Loomis opinion did not directly employ functional categories throughout, in addition to what was stated by the ALJ, the Loomis opinion also noted that Hogan is able to "carry out complex work instructions," as well as to "concentrate and persist in competitive work functions." The ALJ did not render a finding on the persuasiveness of this opinion, only noting that it "represents the best effort to establish [Hogan's] level of functioning" and that "nothing contradicts" Dr. Loomis's findings.[52]

In sum, I find no error in the formulation of the RFC, which I further find to be supported by substantial evidence.

## Conclusion

For the reasons that follow, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated: September 30, 2021    s/William H. Baughman Jr.
United States Magistrate Judge

---

[52] Tr. at 20.